IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RUSSELL L. COOPER, )
    Plaintiff )
     )
v. ) No.
     )
GENERAL NUTRITION, INC., )
GNC FRANCHISING, INC., )
GENERAL NUTRITION COMPANIES, )
INC., and ROYAL NUMICO, N.V., )
    Defendants )

## COMPLAINT

AND NOW, this 3rd day of December, 2006, comes RUSSELL L. COOPER, Plaintiff above named, by and through his undersigned counsel, and files this Complaint, respectfully alleging the following:

### Jurisdiction

Jurisdiction of this federal court is conferred pursuant to the diversity of citizenship jurisdiction of the federal courts, 28 U.S.C. Section 1332; the amount in controversy exceeds $75,000.00. Jurisdiction of this federal court is also conferred under 28 U.S.C. Section 1331 pursuant to its federal question jurisdiction as to the Third Cause of Action, arising under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Section 1001 et

1

seq.; this federal court has jurisdiction also over the state law claims pursuant to the court's pendent jurisdiction.

## Parties

1. Plaintiff is Russell L. Cooper, an individual who resides at 5222 Greystone Way, Birmingham, Alabama 35242.

2. Defendant General Nutrition, Inc., is a corporation with headquarters at 300 Sixth Avenue, Pittsburgh, Allegheny County, Pennsylvania 15222, is doing business in Pennsylvania as "GNC", and is hereinafter referred to as "GNC"; it is a subsidiary or division of Defendant General Nutrition Companies, Inc.

3. Defendant GNC Franchising, Inc., is a corporation with headquarters at 300 Sixth Avenue, Pittsburgh, Allegheny County, Pennsylvania 15222, is doing business in Pennsylvanian, and is hereinafter referred to as "GNC Franchising", and is a subsidiary or division of Defendant General Nutrition Companies, Inc.

4. Defendant General Nutrition Companies, Inc., is a Delaware corporation with headquarters at 300 Sixth Avenue, Pittsburgh, Allegheny County, Pennsylvania 15222, and is the parent of Defendant GNC and Defendant GNC Franchising, Inc.; it is hereinafter referred to as "GNC Companies".

5.      Defendant Royal Numico N.V., is a corporation and was the parent of Defendant General Nutrition Companies, Inc., and also indirectly the parent of Defendant General Nutrition Inc., and Defendant GNC Franchising, Inc.; at all times material hereto, it did business and maintained a location at the headquarters of the GNC Defendants, at 300 Sixth Avenue, Pittsburgh, Allegheny County, Pennsylvania 15222.

### AS AND FOR A FIRST CAUSE OF ACTION
#### (Breach of Contract)

6.      Plaintiff was employed by Defendants, some or all of them, beginning in or about August, 1993, until his employment ceased on December 31, 2004; he was notified on or about February 26, 2003, that he would not be required to perform the duties he had been performing.

7.      The most recent job position which Plaintiff held with Defendants was Senior Vice President and General Manager of GNC Franchising.

8.      During the course of Plaintiff's employment with Defendants, he signed a document entitled "Employment Agreement", a true and correct copy of which is attached hereto as Exhibit A.

9.      The aforesaid Agreement set forth Plaintiff's compensation, in paragraph 3, including his base salary, and purported to set forth the conditions which would trigger the payment to Plaintiff, of incentive compensation, "other compensation", "prior change of control benefit", "gross up payments", and

3

"expenses of enforcement"; additional items of compensation were referred to in Paragraph 7 of the Agreement, and are hereafter referred to as "change of control payments".

10. The Agreement provides that Plaintiff was to be paid his base salary and his other forms of compensation, as if he were an active employee of Defendants during the "Employment Period", even if he were not performing his normal duties of Senior Vice President and General Manager during all of such "Employment Period".

11. The Agreement was drafted by Defendants.

12. Plaintiff had no meaningful ability to change the language in the Agreement before he was required to sign the Agreement in order to maintain his employment with Defendants.

13. The Agreement provides that Plaintiff would be an employee until December 31, 2004, and that the "Employment Period" applicable to his employment would end on December 31, 2004.

14. The wording of paragraph 1 of the Agreement, entitled "EMPLOYMENT", is as follows:

> "Company and Parent agree to employ Executive, and Executive agrees to serve in the position set forth above for the period commencing at the effective time of the Merger (the "Effective Time") and ending December 31, 2001 (the "Employment Period"); provided, however, that on January 1, 2001 and each January 1 thereafter, the Employment Period shall automatically be

4

extended for one additional year, unless not later than 90 days prior to the date of such automatic extension, the Company or Executive shall have given notice to discontinue such extensions." (Emphasis in the original)

15. Plaintiff was notified on or about February 26, 2003, that he would no longer be required to report to GNC's headquarters and would no longer be required to perform his normal, daily duties as Senior Vice President and General Manager, and he was also told by Joe Fortunato, that Defendants "would honor all the terms of the contract", referring to the Employment Agreement.

16. The aforesaid February 26, 2003, notification did not constitute the notice of non-extension as specified in the Agreement.

17. The Agreement provides that under the circumstances described above, Plaintiff was to be paid his regular base salary for the Employment Period ending December 31, 2004, even though for the period from February 27, 2003, to December 31, 2004, Plaintiff was not required to perform his regular, daily duties that he had performed up until February 26, 2003, as Senior Vice President and General Manager; in fact, Defendants did pay Plaintiff his regular base salary for this entire "Employment Period."

18. Paragraph 3(b) of the Agreement, entitled "Incentive Compensation", provides the following:

5

> "(b) Incentive Compensation. Executive shall be eligible to participate <u>during the Employment Period</u> in any annual bonus or incentive plans, stock option plans, stock purchase plans and any other long-term compensation plans, programs or arrangements generally available to members of the senior management of Company. Executive's maximum annual bonus or incentive plan opportunity shall not be less than such opportunity as in effect immediately prior to the date of signing of the Merger Agreement."

19.  Defendants failed to pay to Plaintiff any of the amounts owing him under the annual bonus or incentive plans as referred to in Paragraph 3(b) of the Agreement; other similar-level GNC executives were paid bonuses of 35% of their current base salaries as of December 31, 2003; the amount owing Plaintiff is 35% of his base salary of $260,000.00 per year, or a total of $91,000.00.

20.  Plaintiff made a written demand to Defendants to pay him the sum of $91,000.00 as incentive compensation wrongfully withheld, but Defendants have refused to pay such amount.

21.  Defendants denied Plaintiff the opportunity of participating in the stock option plans referred to in Paragraph 3(b) of the Agreement; Plaintiff estimates that Defendants owed him the sum of approximately $89,000.00, but Defendants have failed to pay him any amount; Plaintiff has made a written demand to Defendants to pay him the amounts owing him for the exercise of his stock options in or about November, 2003, but Defendants have refused to permit him to participate in the stock option plans.

22. Upon information and belief, stock options were granted to GNC executives by Apollo Management, the new owner of the GNC companies, in 2004, and Plaintiff should have been included in such grant but was not; upon information and belief, other compensation may have been made to GNC executives upon or shortly after the purchase of the GNC companies by Apollo Management, but no such compensation was made to Plaintiff.

23. Plaintiff had received for the years 1999-2003 a car allowance as a perquisite of employment, in the amount of approximately $7,500.00 per year, but Defendants failed to pay such sum of $7,500.00 which was due in January, 2004; Plaintiff made written demand for payment of such sum, but Defendants refused to pay the amount owing; such sum was owing to Plaintiff pursuant to Paragraph 3(c) of the Agreement, which provides as follows:

> "(c) Other Compensation. Executive shall be eligible during the Employment Period to participate in all employee benefit plans to which the Company's executives are generally entitled to participate."

Such sum was also owing to Plaintiff pursuant to paragraph 4 of the Agreement, which provides as follows:

> "REIMBURSEMENT OF EXPENSES. During the Employment Period, Company shall continue to provide Executive with the perquisites to which he is entitled immediately prior the Effective time…."

7

23. Paragraph 5 of the Agreement is entitled "EMPLOYMENT COVENANTS", and subparagraph 5(a) sets forth what is basically a non-competition covenant for a period of time during which Plaintiff cannot engage in any "competing business", and delineates the time period as follows:

> "During the Employment Period (as set forth in Section 1 hereof and determined without regard to the termination of Executive's employment)…"

24. Long after he had ceased to perform his normal duties as Senior Vice President and General Manager, Plaintiff requested of Defendants that he be permitted to consult with a potential client, Smoothie King, not wanting to be accused of violating the non-compete covenant set forth in Paragraph 5(a) of the Agreement, but GNC's Senior Vice President of Human Resources and Customer Service informed Plaintiff by a writing dated December 18, 2003, that if he did so, that "…would constitute a breach of the non-compete provision."

25. The two immediately preceding paragraphs show that Defendants considered the "Employment Period" to continue beyond the time when Plaintiff ceased to perform his normal duties as Senior Vice President and General Manager.

26. Paragraph 6 of the Agreement is entitled "TERMINATION ARRANGEMENTS", and subparagraph 6(b) sets forth the following:

8

> "(b) Termination Without Cause; Resignation with Good Reason. In the event Executive's employment is involuntarily terminated by Company without Cause or Executive resigns with Good Reason during the Employment Period, Company shall continue to provide Executive…the compensation, including adjustments, set forth in Section 3 hereof for the remainder of the Employment Period; or, at Executive's (or Executive's estate's) option and in lieu thereof, Company shall pay Executive (or Executive's estate) a lump sum equal to the total aggregate base salary, excluding adjustments, payable for such period, discounted at the rate of 6% per annum, simple interest. Any such lump sum payment shall be made within 30 days of termination…."

27. Defendants' termination of Plaintiff's employment on February 26, 2003, was without cause.

28. Defendants paid to Plaintiff a sum equal to the base salary which Plaintiff was earning as of February 26, 2003, for the period from February 27, 2003, to December 31, 2004, thus indicating that Defendants viewed the "Employment Period" as lasting through December 31, 2004; Plaintiff was not paid a lump sum, but was paid the base salary on a bi-weekly basis for the entire "Employment Period" consisting of 22 months beyond February 26, 2003, and Defendants continued to provide health and dental insurance benefits, with Plaintiff contributing approximately the same amounts toward the premiums for such benefits, as he did prior to February 26, 2003.

29. Other than the payment of Plaintiff's base salary for the period from February 27, 2003, through December 31, 2004, Defendants have failed to

9

pay all of the elements which constituted "Compensation" as set forth in paragraph 3 of the Agreement.

30. Section 7 of the Agreement, entitled "CHANGE OF CONTROL", provides for a cash bonus to be paid to Plaintiff, the relevant language being the following:

> "(a) Cash Bonus. In the event of a Change of Control of the Company, as defined in subparagraph (d) below, while Executive is employed under this Agreement, and in consideration for his remaining in the employment of the Company for one year following the date of the Change of Control, Company shall pay to Executive a bonus equal to two (2) times Executives' then current base salary. This bonus shall be in addition to Executive's regular salary and other forms of compensation. Such bonus shall be paid as follows:
>
> > (i) 50% within 30 days after the date of Change of Control; and
> > (ii) 50% within 30 days of the first anniversary of such Change of Control, if Executive is still in the Company's employ as of that date.
>
> "<u>Should Executive's employment be involuntarily terminated without Cause…Executive…shall be entitled to the "first anniversary payment" within 30 days of such termination</u>.
>
> "Should Executive resign without Good Reason or his employment be involuntarily terminated with Cause prior to the first anniversary date, he shall not be eligible to receive any further amount on the first anniversary date.
>
> "Payments under this Section 7 are separate and distinct from and in addition to any other payments contemplated under this Agreement."
> (Emphasis supplied)

10

31. A "change of control" as defined in Paragraph 7 (b) of the Agreement, took place on or about December 5, 2003, when the GNC Defendants, which were then owned by Royal Numico, N.V., a company organized under the laws of The Netherlands, were sold to Apollo Management, the GNC Defendants' present owner.

32. Despite there being a "change of control", Defendants failed to pay to Plaintiff the payments which were due under Section 7 of the Agreement.

33. Plaintiff made written demand to Defendants regarding payment of the monies due him under Paragraph 7 of the Agreement, by means of a letter dated September 14, 2005, a true and correct copy of which is attached hereto as Exhibit B, but Defendants have refused to make payments of the amounts called for in Paragraph 7.

34. Defendants had hired The Ayco Company, L.P., and Robert W. O'Brien, an employee of Ayco and a financial services adviser, to provide financial services and tax assistance to Plaintiff, as a part of Plaintiff's overall compensation package, as a perquisite; on October 29, 2003, O'Brien informed Plaintiff in writing that he would be paid the aforesaid Change of Control bonus referred to above and as set forth in Paragraph 7 of the Agreement attached hereto as Exhibit A; the letter from O'Brien to Plaintiff is attached hereto and made a part hereof as Exhibit C; such letter was a follow-up to an in-person

11

meeting O'Brien had with Plaintiff one or two weeks earlier, when O'Brien said, "Good news, you're going to receive the change of control payments", and indicating that the sum to be paid to Plaintiff would be $520,000, which was two times Plaintiff's base annual salary, and that Plaintiff needed to consider the tax implications of receiving such amounts; throughout the Employment Period from February 27, 2003, through December 31, 2004, Defendants continued to pay Ayco for financial and tax services rendered to Plaintiff.

35.     With regard to the allegations in the immediately preceding paragraph, Robert O'Brien was acting in the capacity of an agent for Defendants, and had the actual and apparent authority to make the aforesaid communication to Plaintiff, i.e., that Plaintiff would be paid the Change of Control bonus.

36.     By reason of Defendants' failure and subsequent refusal to make the appropriate payments to Plaintiff, as referred to above, Defendants have committed a material breach of the Employment Agreement attached hereto as Exhibit A.

37.     Plaintiff is entitled, if successful in this lawsuit, to payment to him by Defendants, of his reasonable attorneys' fees and litigation expenses, as provided in Paragraph 3(e)(ii) of the Employment Agreement, which provides as follows:

> "Expenses of Enforcement. In the event Executive's employment is involuntarily terminated by Company other than for Cause…, then notwithstanding any provisions to this Agreement to the contrary, Company shall pay all reasonable legal fees and expenses incurred by Executive in the successful enforcement of Executive's rights under this Agreement."

WHEREFORE, Plaintiff respectfully prays this Honorable Court to grant him the following relief:

    a.    The issuance of a judgment declaring that Defendants committed a material breach of the Employment Agreement;

    b.    Contractual damages;

    c.    An order directing Defendants to pay all of Plaintiff's reasonable legal fees and litigation expenses;

    d.    Such other and further relief as is appropriate.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Violation of the Pennsylvania Wage Payment and Collection Law)

38. Plaintiff incorporates herein by reference, paragraphs 1 through 37 hereof, as if the same were set forth fully herein.

39. By reason of Defendants' failure to make the appropriate payments referred to above within thirty (30) days of the date when they were due and owing, Defendants have violated the Pennsylvania Wage Payment and Collection Law.

40. Because Defendants have violated the Pennsylvania Wage Payment and Collection Law, Plaintiff is entitled to a verdict and award consisting not only of the basic amounts due, as referred to above, but also an additional amount of twenty-five per cent (25%) of the amount owing, as liquidated damages, plus payment of reasonable attorneys' fees and litigation expenses.

WHEREFORE, Plaintiff respectfully prays this Honorable Court to grant him the following relief:

a. The issuance of a judgment declaring that Defendants violated the Pennsylvania Wage Payment and Collection Law;

b. Damages recoverable under the Pennsylvania Wage Payment and Collection law, including the base amount owing, plus 25 per cent (25%) of the base amount as liquidated damages;

c. An order directing Defendants to pay all of Plaintiff's reasonable legal fees and litigation expenses;

d. Such other and further relief as is appropriate.

AS AND FOR A THIRD CAUSE OF ACTION
Russell L. Cooper
v.
Royal Numico, N.V., Defendant
(Violation of ERISA)

14

41. Plaintiff incorporates herein by reference, paragraphs 1 through 40 hereof, as if the same were set forth fully herein.

42. Although Plaintiff believes that his basic claims are for breach of contract and for a violation of the Pennsylvania Wage Payment and Collection Law, if it is held that the Employment Agreement attached hereto as Exhibit A set up an ERISA plan providing for payments to key members of management, upon the occurrence of certain events, and that ERISA preemption applies, Plaintiff is pleading this ERISA claim as a precaution, and in the alternative.

43. If it is determined that the Employment Agreement established an ERISA plan, and that ERISA preemption applies, Plaintiff was arbitrarily excluded from participation in such plan.

44. If it is determined that the Employment Agreement established an ERISA plan, and that ERISA preemption applies, Defendant Royal Numico, N.V., failed to pay Plaintiff the incentive compensation and other amounts which were owing him under the plan.

45. By reason of the foregoing, if it is determined that the Employment Agreement established an ERISA plan, and that ERISA preemption applies, Defendant Royal Numico, N.V., has violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1132(a).

15

WHEREFORE, if it is determined that the Employment Agreement established an ERISA plan, and that ERISA preemption applies, Plaintiff demands all relief available to him under ERISA, including but not limited to:

    a.    The issuance of a judgment declaring that Defendant Royal Numico, N.V., violated the Employee Retirement Income Security Act of 1974;

    b.    Damages recoverable under ERISA, including the base amount owing, plus interest at the lawful rate on the base amount as liquidated damages;

    c.    An additional amount of interest on the base amount, beyond the lawful rate of interest, to punish Defendant for its willful violation of the statute;

    d.    An order directing Defendant to pay all of Plaintiff's reasonable legal fees and litigation expenses;

    e.    Such other and further relief as is appropriate.

/s/ James H. Logan
James H. Logan, Esq.
PA ID #10485
Logan & Logan
Suite 3201 Grant Bldg.
Pittsburgh, PA 15219
412-765-0983
Fax: 412-765-2781
EM: loganloganemp@yahoo.com
Attorney for Plaintiff